UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

SOSCIA HOLDINGS, LLC

vs.

STATE OF RHODE ISLAND, STATE OF
RHODE ISLAND DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT and                C.A. No.
TERENCE GRAY, IN HIS CAPACITY AS
THE DIRECTOR OF THE RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL
MANAGEMENT

## COMPLAINT

NOW COMES the Plaintiff, SOSCIA HOLDINGS, LLC., in the above-entitled matter and hereby complains against the State of Rhode Island, State of Rhode Island Department of Environmental Management and Terence Gray, in his capacity as the Director of the Rhode Island Department of Environmental Management as follows:

## FACTS

1.      SOSCIA HOLDINGS, LLC., is a limited liability company organized and existing under the laws of the State of Rhode Island  (hereinafter called "Soscia").

2.      The State of Rhode Island is a state existing under the Constitution of the United States of America (hereinafter called the "State").

3.      The Department of the Rhode Island Environmental Management is a Department within the executive branch of the government of the State of Rhode Island created by Rhode Island General Law § 42-17.1-1 (hereinafter called "DEM") .

4.      Terence Gray is the Director of the Department of Environmental Management authorized to act upon said department pursuant to the powers and duties set forth in R.I.G.L. § 42-17.1-2 hereinafter called the "Director").

5.      Jurisdiction for this action is predicated upon 28 U.S.C. § 1331 and the Court's pendent jurisdiction.

6.      On or about March 3, 2020, Soscia Holdings did purchase from the Quidnick Reservoir Company, a Rhode Island Corporation, (hereinafter referred to as "Quidnick") that certain Dam known as the Flat River Reservoir Dam together with the land and water rights of Quidnick located in the Town of Coventry including the water rights commonly known as Johnson's Pond, all as evidenced by the real estate purchase and sale agreement, as amended by Agreement dated March 2, 2020, (hereinafter collectively referred to as the "Agreement").

7.      The premises purchased by Soscia Holdings did contain a dam which dam restricted the flow of water flowing down the Pawtuxet River and created that certain body of water commonly known as "Johnson's Pond".

8.      The water rights referred to in the Agreement which were purchased by Soscia Holdings were acquired by Quidnick pursuant to actions of the Rhode Island General Assembly as amended by subsequent enactments.

9.      The submerged land described in the Quitclaim Deed became submerged as a result of the construction and erection of the Flat River Reservoir Dam by Quidnick.

10.     The construction and erection of the Flat River Reservoir Dam dammed the waters of the Pawtuxet River thereby creating a reservoir commonly known as Johnson's Pond.

11.     The construction of Flat River Reservoir Dam and the creation of Johnson's Pond resulted from the acquisition by Quidnick of water rights pursuant to the 1846 act of the Rhode

2

Island General Assembly which formed Quidnick as a corporation having the status of a corporate and body politic and authorized it to build dams and reservoirs on the Pawtuxet River in the municipalities of Coventry and Warwick as they existed in 1846 for the purpose of accommodating the factories and mills along the Pawtuxet River.

12.     The factory and mill owners constituted the members of Quidnick, thereby creating a corporation governed by its members and not by stockholders.

13.     Quidnick purchased various parcels of land and flowage easements over other parcels of land and erected several dams along the River in order to service various mills of the members of Quidnick on the Pawtuxet River.

14.     Among the dams constructed was a dam known as the Flat River Reservoir dam.

15.     The construction of the Flat River Reservoir dam resulted in the creation of a reservoir of water to be used in connection with the operation of the dam for the purpose of storing water in order that Quidnick and its successors in interest could regulate the flow of water through the use of its flowage rights to their advantage.

16.     As set forth in paragraphs 8 and 11 of this Verified Complaint, the Rhode Island General Assembly in 1846 Act did grant Quidnick an exclusive franchise to utilize the water rights of the Pawtuxet River for its purposes for the sole and exclusive benefit of Quidnick's members.

17.     The 1846 Act account was amended by subsequent enactments occurring in 1867 and 1975 and 1982, all of such enactments recognized the exclusive franchise granted to Quidnick to erect the Flat River Dam and the reservoir abutting said dam together with the right to use the waters of the Pawtuxet River for the exclusive use of its members.

18. The 1982 amendment to the 1846 Act as subsequently amended in 1867 and 1975, continued to recognize Quidnick's franchise rights with respect to the waters of the Pawtuxet River in connection with the operation of its dam and also granted it the right to retain such water for any lawful purpose including, all economic benefits stemming from the retention of said waters.

19. Quidnick did construct the dam and acquired flowage rights and purchased land for the purposes of exercising the exclusive franchise rights granted to it by the General Assembly.

20. Quidnick and its successor in interest, Soscia Holdings, have operated and continue to operate the dam and exercise their exclusive franchise rights from the date of the construction of the dam and the creation of the reservoir commonly known as Johnson's Pond, to the time of the filing of this Complaint.

21. The water rights granted to Quidnick and sold to Soscia Holdings inure solely to the benefit, economic or otherwise, of Soscia Holdings.

22. The Reservoir commonly known as Johnson's Pond stores the water of the Pawtuxet River upon Soscia Holdings real property interests and is released by Soscia Holdings to its sole economic advantage.

23. The economic advantage with respects to such water rights are owned solely by Soscia Holdings.

24. On or about January 1, 2009, the Town of Coventry, a municipal corporation organized and existing under the laws of the State of Rhode Island, as Lessee, did enter into a Lease Agreement with Quidnick, as Lessor, leasing a portion of Quidnick's rights in and to Johnson's Pond.

25.     Together with the purchase of the submerged land and all of the rights, including water rights owned by Quidnick described in paragraph 6 hereof, Quidnick did assign all of its interest in and to the Lease to Soscia.

26.     That on or about June 27, 2022, a bill was enacted by the Rhode Island General Assembly and signed into law by the Governor for the State of Rhode Island which is set forth in R.I.G.L. § 46-19.1-1 (hereinafter referred to as the "Flat River Dam Act").

27.     In reliance upon the Flat River Dam Act on or about July 13, 2022, DEM did order Soscia to cease and desist from operating the Flat River Dam which it had purchased in a manner inconsistent with historic use as outlined in a letter sent by DEM on July 11, 2022, and further ordering Soscia to reduce stream flow to 24 cfs all as determined by DEM without having given Soscia a reasonable time or hearing which would permit Soscia to comment and be heard on the historic use of the Dam.

28.     The order to cease and desist sent by DEM to Soscia regulates and interferes with the operation of the Flat River Reservoir Dam the control of which has been with its owners Quidnick and Soscia since the construction of the Dam and Johnson's Pond shortly after the 1846 enactment granting Quidnick a franchise of the waters of the Pawtuxet River and with Soscia's ability to determine the amount of water, if any, to be placed upon its submerged real property.

**COUNT I – 42 U.S.C. § 1983 – CIVIL ACTION FOR DEPRIVATION OF RIGHTS OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS**

29.     Plaintiff realleges and incorporates herein by reference paragraphs 1 through 28 of the Verified Complaint.

30. In sending the letter dated July 11, 2022, and issuing the cease and desist order on July 13, 2022, Defendant failed to give Soscia an opportunity to comment and/or hearing in violation of Soscia's constitutional rights arising under the Constitution of the United States in violation of:

    a    Amendments V and XIV, Due Process; and

    b.    Amendment XIV, Equal protection.

31. Plaintiff has been damaged thereby.

WHEREFORE, Plaintiff respectfully requests:

a. A declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

    1. Defendants have acted in an arbitrary and capricious manner in ordering Soscia to operate the Flat River Reservoir Dam in a manner directed by the cease and desist order dated July 13, 2022.

    2. That the cease and desist order issued by DEM on July 13, 2022, is unconstitutional.

    3. That to the extent that R.I.G.L. § 46-19.1-1 authorizes DEM to issue such a cease and desist order without granting Soscia a fair opportunity to be heard it is unconstitutional.

b. Issue a preliminary and a permanent injunctions restraining and enjoining Defendants from interfering in any manner with Soscia's rights to operate the Flat River Reservoir Dam by regulating the flow of the water through the gates of the Dam and to otherwise control the level of water contained in Johnson's Pond.

c. Award Plaintiff compensatory and punitive damages as provided by 42 U.S.C. § 1983.

d.  Attorney fees and costs.

e.  Any other relief this Honorable Court deems meet and proper.

### COUNT II– 42 U.S.C. § 1983 – CIVIL ACTION FOR DEPRIVATION OF PROPERTY RIGHTS CONSTITUTING A TAKING IN VIOLATION OF THE TAKINGS CLAUSE OF THE UNITED STATES CONSTITUTION

32. Plaintiff realleges and incorporates herein by reference paragraph 1 through 28 of the Verified Complaint.

33. Rhode Island General Laws § 46-19.1-1 and § 46-17.1-1 et. seq. authorizes the Director to order Soscia to operate the Flat River Reservoir Dam in a manner consistent with historic use which historic use shall be solely determined by the Director.

34. Rhode Island General Laws § 42-17.6-1 et. seq. and § 46-19.1-1 authorizes the Director to assess a penalty on any private corporation which fails to comply with any order of the Director in an amount of $1,000.00 per day that the non-compliance with the cease and desist order continues.

35. That in issuing the cease and desist order on July 13, 2022, pursuant to the statutes referred to in paragraphs 33 and 34 hereof the Director did take Soscia's property rights which it purchased from Quidnick as follows:

  a.  The Director did take Soscia's water rights as granted to it pursuant to the enactments of the Rhode Island General Assembly;

  b.  DEM did interfere with Soscia's rights to lower the water in Johnson's Pond to a level preventing Soscia from creating dry land which land was formerly submerged and which dry land could be used by Soscia to its economic advantage; and

  c. The actions of the Director require Soscia to keep its submerged land under water which actions completely deprive Soscia of all economically beneficial use of its property.

  d. The actions of DEM in issuing the cease and desist dated July 13, 2022, constitute a physical taking of Soscia's real property rights in the submerged land and its flowage rights, contract rights and its rights granted to it by the Rhode Island General Assembly in the enactments by the General Assembly of 1846, 1867, 1975 and 1982.

36. The cease and desist order issued by the DEM was issued without the payment of just compensation as required by the Takings Clause of the Fifth Amendment of the United States Constitution (United States Constitution Amendment V).

37. That said action by the Director in taking Soscia's property without just compensation as required by the Takings Clause of the Fifth Amendment of the United States Constitution has deprived Soscia of his Civil Rights and constitute a violation of 42 U.S.C. § 1983.

38. Soscia has been damaged by Defendants' actions.

  WHEREFORE, Plaintiff respectfully requests:

a. A declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

  1. Defendants have taken Soscia's property rights in violation of the Takings Clause of the United States Constitution contained in the Fifth Amendment to the United States Constitution.

  2. That the cease and desist order issued by DEM on July 13, 2022, is unconstitutional.

       3.      That to the extent that R.I.G.L. § 46-19.1-1 authorizes DEM to regulate the operation of the Flat River Reservoir Dam and control the level of water contained in Johnson's Pond it is unconstitutional in violation of the Takings Clause of the United States Constitution contained in the Fifth Amendment to the United States Constitution.

b.      Issue a preliminary and a permanent injunctions restraining and enjoining Defendants from interfering in any manner with Soscia's rights to operate the Flat River Reservoir Dam by regulating the flow of the water through the gates of the Dam and to otherwise control the level of water contained in Johnson's Pond.

c.      Award Plaintiff compensatory and punitive damages as provided by 42 U.S.C. § 1983.

d.      Attorney fees and costs.

e.      Any other relief this Honorable Court deems meet and proper.

### COUNT III – Intentional Interference with Contractual Relations

39. R.I.G.L. §46-18-1 provides that Soscia Holdings as owner of a mill dam can continue and improve the reservoir known as Johnson's Pond and keep up the dam for its own advantages without molestation.

40. Quidnick did purchase certain land and flowage easements all as described in the Quitclaim Deed referenced above in this complaint.

41. Soscia Holdings did purchase all of said water rights located in the Town of Coventry from Quidnick.

42. Quidnick created an artificial pond upon its land and upon the land to which it acquired flowage easements as described above.

43. As a result of the exercise of its rights of flowage, by creating an artificial pond Quidnick acquired the exclusive right to use the water thus stored upon its land and upon the land to which it acquired flowage rights.

44. By purchasing Quidnick's water rights Soscia Holdings, as owner, acquired the exclusive water rights in the artificial pond commonly known as Johnson's Pond.

45. As part of the overall purchase of the property and water rights from Quidnick, Soscia Holdings, LLC became the successor Lessor in that certain Lease dated January 1, 2009 ("Lease") between the Town of Coventry and Quidnick for the Pond and Open Space comprised in part of the Flat River Reservoir.

46. The Lease provides for certain water levels in Johnson's Pond and minimum stream flows in the South Branch of the Pawtuxet, to be maintained within its terms. Said lease acknowledges and affirms Soscia's right as owner, to have the exclusive right to maintain, operate and monitor the Control Gates that regulate the flow of water from Johnson's Pond into the Pawtuxet River.

47. In and around August of 2020, after Soscia Holdings took ownership, DEM and David Chopy (DEM head of Inspection and Compliance) began to interfere in Lease matters, alleging that Soscia was in violation of the Lease with the Town of Coventry only as it related to the maintenance of water levels, particularly lowering said water levels. RIDEM knowingly based its allegations on an expired and no longer valid consent agreement previously entered into by Quidnick with DEM that referenced the water levels and stream flows set forth in the Lease. The expired consent agreement

specifically acknowledged the owner's right to alter the water levels in response to various events including extreme weather and damage to the dam or control gates.

48. At that time in August 2020, DEM had no valid interest in any of the subject matter pertaining to the Lease and had no rights whatsoever with respect to enforcement of the Lease. At no time has DEM notified the Plaintiff that the dam is in an unsafe condition or required any specific alterations to bring the dam to a safe condition.

49. Upon information and belief, DEM and Chopy had been receiving various communications from Town of Coventry officials, one or more Rhode Island legislators and officers and officials of the Johnson's Pond Civic Association ("JPCA"), relating to the fact that the owner had adjusted the water level of the pond.

50. Despite having no rights whatsoever in the Lease, DEM and Chopy began forwarding suggestions of alteration to increase the water levels and stream flows called for in the Lease, the purpose of which was to benefit only the Town and the members of the JPCA. The DEM's authority in regulating the water levels in the Pond is directly related to safety of a dam, and is limited to requiring an owner to lower the water levels if it is determined that there is an unsafe condition at the dam.

51. Plaintiff, Soscia Holdings, LLC and the Town of Coventry have been in litigation regarding the Town's lack of compliance with Lease terms and failure of the Town to fulfill its duties and obligations under the Lease.

52. Upon information and belief, various Town of Coventry officials, attorneys, one or more Rhode Island legislators and officers and members of the JPCA have engaged in numerous communications with Chopy and DEM staff regarding the litigation and water

levels in the Pond in an attempt to require the owner to increase the water levels in the Pond, thereby increasing its liability associated with any damage resulting therefrom.

53. Upon information and belief, those individuals referenced in the preceding paragraph have been seeking Chopy and DEM's aid in gaining strategic advantages in the aforementioned litigation and Lease by prompting involvement and threatened enforcement by DEM against Soscia Holdings if water levels called for under the Lease are not maintained. Upon information and belief, DEM has been improperly and tortiously colluding with the Town of Coventry by falsely claiming its involvement in attempting to influence the contractual relations in the Lease and stated water levels, were undertaken in the interest of promoting dam safety in an attempt to improperly gain advantage for the Town of Coventry and the JPCA and alter the Plaintiff's contractual rights, to Plaintiff's detriment.

54. On the eve of a scheduled Superior Court conference regarding a motion relating to maintenance of water levels in the Pond seeking injunctive relief by the Town of Coventry against Soscia Holdings, Chopy-----*on Easter Sunday---* transmitted correspondence to the Town officials and Soscia seeking to place the Town in a position of advantage with respect to conference of the motion and influence the Court to the disadvantage of Soscia Holdings, LLC.

55. The correspondence referred to in the preceding paragraph was disseminated at 7:54 p.m. on Easter Sunday via email to a multitude of state and local officials, the Town of Coventry and its attorneys and officers and members of the JPCA, presumably to ensure that it was in their possession prior to the opening of the Superior Court on the following day.

56. DEM counsel also improperly attempted to join a video conference scheduled by a Superior Court judge in April of 2021, in repeated intrusion in the private litigation over the Lease between the Town of Coventry and Soscia Holdings, LLC.  The Court did not issue an invite to anyone from DEM and this action by DEM was presumably done, upon information and belief for the purpose of influencing the Court and improperly interfering in the contractual relations between Soscia Holdings, LLC and the Town of Coventry.

57. Upon information and belief, since Soscia Holdings purchased the pond and flowage rights from Quidnick, DEM has acted in concert with and at the urging of one or more state legislators and one or more officers of the JPCA, to curtail its past practice of requiring assent from Quidnick and Soscia Holdings, LLC and DEM to build a dock or other structure on Johnson's Pond.

58. DEM, in 2021, departed from its past practice and failed to cite a property owner who was illegally constructing a dock on Johnson's Pond without permission from DEM, the Town of Coventry or Soscia Holdings, LLC, despite the fact that DEM does not have jurisdiction over the same.

59. Chopy and DEM have also promoted the demonstrably false assertion, that the control of water levels and stream flow are to be mainly reliant on the dam's spillway, and that the low level outflow pipes were not intended to be utilized as the primary source of control over water levels in Johnson's Pond and stream flow in the South Branch of the Pawtuxet River.  DEM has no authority to dictate how the water levels are maintained in the Pond other than to cause the water levels to be lowered if it is determined that the dam is unsafe.

13

60. Chopy and DEM, have unreasonably questioned and challenged Soscia Holdings, LLC's flood prevention actions taken in the face of documented, impending storm threats, including but not limited to, tropical storms, hurricanes, and inundating rainfall. DEM's statutory authority in regulating the safety of dams is limited to requiring water levels to be drawn down in the interest of protecting the safety of the public from flooding events.

61. Such actions have been undertaken for the purpose of attempting to force Soscia Holdings to maintain higher water levels in the Pond than those called for under the Lease between it and the Town of Coventry, for the benefit of the Town and to the detriment of Soscia Holdings, LLC., and in excess of DEM's statutory authority as it relates to water levels of dams and reservoirs found in R.I. Gen. Laws Section 46-19-4.

62. Maintaining higher water levels in contravention to the rights and obligations set forth in the Lease subjects the Plaintiff to increased liability for flooding and damage to surrounding and downstream properties and improperly interferes with Plaintiff's statutory rights as a dam and mill pond owner to protect itself from said liability.

63. Plaintiff, as a purchaser of a franchise originally granted to Quidnick Reservoir Company, has the right to erect, establish, maintain and keep in order, dams, and reservoirs on the waters of the Pawtuxet River and its branches.

64. As the owner of the dam on Johnson's Pond, Plaintiff has the right, pursuant to R.I. Gen. Laws Section 46-18-1, to "continue and improve the pond and keep up the dam thereof on [Plaintiff's] own land for his or her advantage without molestations."

65. DEM's actions in regard to Plaintiff constitute unlawful and improper molestations in violation of Plaintiff's rights as the dam owner.

66. Plaintiff, Soscia Holdings, LLC, repeats and re-alleges the allegations set forth in paragraphs 1- 25 as if fully set forth herein.

67. Defendant, Rhode Island Department of Environmental Management knew of the Lease contract between Soscia Holdings, LLC and the Town of Coventry.

68. Defendant, Rhode Island Department of Environmental Management knew that the Lease terms were in full force and effect.

69. Defendant, Rhode Island Department of Environmental Management's repeated insertions into a private lawsuit as set forth above in this Complaint were taken intentionally and improperly to influence the Plaintiff to maintain higher water levels in the Pond for the benefit of DEM, the Town of Coventry and the JPCA and to the detriment of the Plaintiff, under the guise of, and in contravention with, its statutory and regulatory authority found in R.I. Gen. Laws Section 46-19-1 et seq.

70. Plaintiff has suffered harm and caused to incur damages as a result of Defendant's actions in interference with Soscia's contract with the Town, including but not limited to increased engineering, legal and consulting fees.

WHEREFORE, Plaintiff prays this Court enter judgment in favor of Plaintiff and against Defendant, Rhode Island Department of Environmental Management; award Plaintiff its attorneys' fees costs and expenses incurred in connection with this matter and award any and all additional relief deemed just and appropriate under the circumstances.

**COUNT IV – Intentional Interference With Franchise/Contractual Right**

71. Plaintiff, Soscia Holdings, LLC, repeats and re-alleges the allegations set forth in paragraphs 1- 25 and 39-65 as if fully set forth herein.

72. Soscia Holdings, LLC purchased the exclusive unrestricted franchise "*for the establishment and operation of hydro power sites for its members' uses and resale of power generated therefrom; and any other legal purposes*" from the Quidnick Reservoir Co. in March 2020.

73. The Supreme Court of the State of Rhode Island held in *Smith v. Westcott*, 17 R.I. 366 (R.I. 1891) "In regard to the power of the legislature to alter or repeal a grant, a marked distinction has always been observed between private and public grants……it has become settled that an unrestricted grant to an individual or private corporation becomes, when accepted, *a contract which is beyond legislative control."* (emphasis added)……"*when the law is in the nature of a contract, cannot be divested by a subsequent change or repeal of the law, because this would impair the obligation of an executed contract*." (emphasis added)

74. The franchise contract or grant now held by Soscia Holdings, LLC, is a contract with the State of Rhode Island that cannot be divested by a subsequent change or repeal of the law and Defendant, Rhode Island Department of Environmental Management cannot alter or affect Plaintiff's operation of the dam and use of flowage rights through its existing regulations, except insofar as they concern dam safety.

75. In addition to the franchise contract with the State of Rhode Island, Soscia Holdings, LLC's operation of the water level and stream flow via the dam is not subject to regulation by Defendant according to R.I.G.L. § 46-18-1 which states: R.I.G.L. § 46-18-1. "Right of owner to continue and improve dam and pond." "*Whenever any person, either upon his or her own land*

*or upon the land of another with his or her consent, <u>shall have set up</u> any water mill <u>or dam</u> for the purpose of forming a pond to supply water to any mill or mills upon the stream whereon the dam is located, the owner of the mill <u>or dam</u> may continue and improve the pond and keep up the dam thereof on his or her own land <u>for his or her advantage without molestations.</u>"*

76.     The Flat River Reservoir is an artificially created "Mill Pond". And Soscia Holdings, LLC has the right to operate and keep up the dam "unmolested" by Defendant.

77.     Defendant's actions as set forth above in this Complaint constitute unlawful molestation and malicious and intentional improper interference with the franchise contract in violation of Plaintiff's property and legislatively granted rights.

78.     As the owner and operator of the Flat River Reservoir dam, Plaintiff is subject to R.I.G.L. § 46-18-2 **Action for damages from dam — Liability of mill and dam for recovery** which states: "any person aggrieved or injured by the following of the pond raised by the dam, or by the stopping or raising of the water either above or below the dam, or by the backing of water under his or her land, or by the flowing out of any fall of water in his or her land by means of the dam may commence a civil action, in the superior court for the county in which the dam is, against the owner of the dam or any precedent owner thereof"

79.     Defendant's actions in improperly colluding with the Town of Coventry and the Johnson's Pond Civic Association to deter or prohibit Plaintiff from utilizing the low level outflow pipes to regulate the level of the pond and stream flow is subjecting Plaintiff to the risk of irreparable harm and financial liability under the statute cited in the preceding paragraph of the Complaint.

80.     Defendant's threatened actions to subject Plaintiff to the impositions of fines for alleged violations of the RI Freshwater Wetlands Act, when such act does not even apply, in connection

17

with Plaintiff's operation of the dam constitute intentional and malicious interference with their franchise granted by the State of Rhode Island and the Lease contract with the Town of Coventry.

81. Defendant knew of the franchise rights and legislative contract between the State of Rhode Island and Soscia Holdings, LLC, as successor in interest to Quidnick Reservoir Company.

82. Defendant knew that the Plaintiff's franchise rights and rights afforded to dam and pond owners under the Mill Dam act were in full force and effect.

83. Defendant, Rhode Island Department of Environmental Management's actions as set forth above in the Complaint were taken intentionally and improperly and with malice in flagrant disregard of Plaintiff's contractual and legislatively granted rights.

84. Plaintiff has suffered harm and has been caused to incur damages as a result of Defendant's action in interference with Plaintiff's contractual and legislatively granted rights.

WHEREFORE, Plaintiff prays this Court enter judgment in favor of Plaintiff and against Defendant, Rhode Island Department of Environmental Management; award Plaintiff its attorneys' fees costs and expenses incurred in connection with this matter and award any and all additional relief deemed just and appropriate under the circumstances.

> SOSCIA HOLDINGS, LLC
> By its attorney,
>
> /s/ Patrick J. Dougherty
> Patrick J. Dougherty, #5082
> Dougherty & Associates Law, Inc.
> 887 Boston Neck Road, Suite #1
> Narragansett, RI 02882
> Ph: 401-789-8400
> Fax: 401-789-8401
> pjdoughertylaw@verizon.net